Patrick VOLITIS, Plaintiff,

v.

MERCK & CO., INC., Defendant.

No. CIV.A. 98–5466.

United States District Court,
E.D. Pennsylvania.

Jan. 22, 2001.

Theodore Q. Thompson, Ambler, PA, for Plaintiff.

Michael S. Burkhardt, Paul M. Secunda, Morgan, Lewis & Bockius, Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

Plaintiff Patrick Volitis ("Volitis") filed this action against his employer, Merck & Company, Inc. ("Merck"), alleging that he did not receive positions at Merck for which he bid because of a disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), Pa. Stat. Ann. Tit. 43, § 951 *et seq.* Before me is Merck's motion for summary judgement. On September 21, 2000, I heard oral argument on the motion. I will now grant the motion.[1]

### RELEVANT FACTS IN EVIDENCE[2]

Volitis was first hired by Merck at its facility in West Point, Pennsylvania as a service worker on September 17, 1968. During the course of his employment at Merck, Volitis has held a number of different positions. Most recently, from approximately 1991 to the present, he has held the position of Process Control Room Operator.

In 1978, Volitis injured his knee while at work. Over approximately the next twelve years, he underwent various medical procedures for his knee, including knee re-

---

1. The last relevant submission related to this motion is the defendants reply brief, submitted on October 23, 2000, in response to the plaintiff's list of facts.

2. As appropriate on a motion for summary judgment, the facts are stated in the light most favorable to the plaintiff.

placement in 1989. Following the knee replacement, Volitis' physician placed restrictions on his work activities. As of January 20, 1995, these restrictions included: no walking over one hour, no standing over two hours, and no sitting more than four hours during an eight-hour shift, no squatting, no crawling, no climbing, and no frequent lifting over twenty-five pounds. These restrictions became somewhat less restrictive over time. For instance, by August 1996, his work restrictions were modified to: no walking for more than two hours, no standing for more than three hours, and no sitting for more than six hours during an eight hour shift, and no lifting over fifty pounds.

Volitis testified that his physician was taking a conservative approach when establishing these work restrictions and that he was actually capable of more than was indicated by his work restrictions. *See* Exhibit A (Volitis Dep.) of Defendant's Motion for Summary Judgement at 248, 250–51. He also testified that, in his opinion, these restrictions did not restrict his ability to work in any job at Merck without accommodation. *See id.* at 261.

Merck was aware of and reviewed Volitis' work restrictions. Volitis was referred to the Health Services Department at Merck ("Health Services") for assessments of his work restrictions and for physical therapy. On one occasion Health Services confirmed that Volitis had "impaired mobility" based upon a "review of medical data." Exhibit 1 of Plaintiff's Facts. Merck also repeatedly granted Volitis "in-plant parking" privileges. Exhibits 2, 4, 5, 6. Additional documentation from Health Services, including Volitis' patient chart, lists Volitis' specific work limitations. These limitations include, no lifting over fifty pounds; no sitting more than six hours; no standing more than three hours; no walking more than three hours; no

repetitive motion with right knee. *See* Exhibits 3, 4, 7. *See also,* Exhibit 2 attached to Exhibit C of Plaintiff's Summary Judgement Reply Brief. They are identical to or less restrictive than the work restrictions from Volitis' outside physician. On March 26, 1998, Volitis visited Health Services for "restriction review and in plant parking." The "contact summary" on Volitis' patient chart from this visit notes that Volitis stated that the "previous restrictions were working well." Ex. 4 of Plaintiff's Facts.

On several occasions, beginning some time in 1995, Volitis requested to be transferred to other positions at Merck by bidding on internally posted jobs at the West Point facility.[3] The positions that Volitis sought include chemist, sterile operator[4], and grounds crew.

When an employee at Merck makes a bid for a position, the supervisor or manager in charge of the position receives information from Human Resources on the employee's education and experience, including any medical restrictions. When the employee has medical restrictions, it is company practice to refer the employee to Health Services for a "Functional Capacity Assessment", an assessment of his or her physical capability with respect to the responsibilities of the job. Ex. C of Plaintiff's Summary Judgement Reply Brief (Crawford Dep.) at 14. *See also,* Ex. 10 of Plaintiff's Facts (Dep. of Joseph Pulli, Senior Director of Labor Relations) at 32. Health Services then makes a recommendation to the supervisor or manager in charge of hiring for that position regarding whether or not the employee is a "match" for the job. Health Services has the authority to modify medical restrictions received from an outside physician, specifically to remove or lift the restrictions. *See* Ex. 12 (Deposition of Anna Buinewicz, M.D., Medical Director at Merck) of Plain-

---

**3.** Volitis asserts that he would have been able to make more money in overtime in the positions that he sought.

**4.** It is unclear from the record whether "sterile operator" is the correct title of the position.

tiff's Facts at 33. Upon receiving Health Services' recommendation, the supervisor or manager has the authority to determine whether the company can make an accommodation for a restricted employee and to make the final determination of whether an employee is capable of performing the job.

Susan Crawford, former manager of the work site rehabilitation services at Merck, performed a Functional Capacity Assessment of Volitis for the positions of chemist and sterile operator. Prior to conducting the assessments, Crawford researched the requirements of each job, through work site visits and inquiries with employees familiar with the job. *See* Ex. C of Plaintiff's Summary Judgement Reply Brief at 17, 35. She determined that the position of chemist required frequent stair climbing, between thirty-four and sixty-seven percent of an eight hour shift, considering allotted breaks. Based on her assessment of Volitis' physical restrictions, she recommended that Volitis was not a match for the chemist position. Volitis testified that he was capable of climbing stairs at the frequency required for the chemist job, but there is no evidence that Volitis challenged Crawford's medical assessment. Crawford assessed that Volitis was a match for the sterile operator position.

Volitis testified that Thomas McQuarrie, Human Resources and Labor Relations Manager, told him that he was not capable of performing the job of grounds crew. *See* Exhibit A (Volitis Dep.) of Defendant's Motion for Summary Judgement at 428. At the time that Volitis bid for the grounds crew position, the job involved moving office furniture up and down steps. *See id.* at 429. Volitis also testified that he told the supervisor of the grounds crew that he "wouldn't want to be in a situation of running office furniture up and down steps all day." *Id.*

James Wood, former associate director of Human Resources and Labor Relations, testified that he was contacted on more than one occasion to assist in a determina-tion of Volitis' physical capability with respect to a job on which he bid. Wood was asked for clarification of a medical restriction, which he then sought from Health Services. *See* Ex. 11 of Plaintiff's Facts at 9–10. Jeanne Stahl, Senior Director of Development and Production, testified that Volitis was denied at least one job because of his medical restrictions. *See* Ex. 14. of Plaintiff's Facts at 24.

## LEGAL STANDARD

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The role of the trial court is to determine whether there are material factual issues that merit a trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making that determination, the court must give the nonmoving party the benefit of all reasonable inferences that might be drawn from the underlying facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Sempier v. Johnson and Higgins,* 45 F.3d 724, 727 (3d Cir.1995) (en banc). Summary judgment is appropriate if the court finds that the record "could not lead a rational trier of fact to find for the nonmoving party, [and] there is no 'genuine issue for trial.'" *Matsushita* 475 U.S. at 587, 106 S.Ct. 1348 (citation omitted).

## DISCUSSION

■ Merck argues that it is entitled to summary judgement because Volitis has failed to make out a prima facie case of discrimination under the ADA or the PHRA. To present a prima facie case under the ADA or the PHRA, the plaintiff must establish that: 1) he is disabled; 2) he is qualified for the particular job; and 3) he has suffered an adverse employment

action because of the disability. *See Deane v. Pocono Medical Center*, 142 F.3d 138, 142 (3rd Cir.1998); *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3rd Cir.1996)(the law on disability discrimination under the PHRA is treated the same as under the ADA). *See also, Jones v. School District of Philadelphia*, 198 F.3d 403, 409(3rd Cir.1999)(confirming that the standards under Pennsylvania and Federal law are the same for purposes of determining summary judgement). Merck contends that Volitis cannot establish the first prong of the prima facie case, that he is "disabled" under the law.[5]

The ADA defines a "disability" as: "(a) A physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Volitis does not claim that he has an actual disability under the law. He claims that Merck has regarded him as having a physical or mental impairment that substantially limits one or more of his major life activities, the major life activity of working.

■ In Volitis' first response to summary judgement, he argued that he has an actual disability. At oral argument, Volitis conceded that he is not actually disabled and that his work restrictions from his outside physician do not rise to the level of a disability. Also at oral argument, for the first time Volitis mentioned that he thought he had a claim that Merck has regarded him as disabled. In support of his "regarded as" claim, he presented me with two recent district court opinions explaining the "regarded as" claim. I then gave the defendant an opportunity to respond by letter to the plaintiff's new theory. Thereafter, I ordered the plaintiff to submit a list of the facts that he is relying upon in support of his "regarded as" claim. The plaintiff simply submitted a pile of documents and depositions, but presented

no statement of the facts to indicate how Merck regarded Volitis as disabled. For that reason alone, I will grant this motion for summary judgement.

■ To be certain that I am not dismissing some valid claim buried in the pile of documents and depositions, I have carefully reviewed everything submitted. As I will now explain, drawing from the documents and depositions submitted, I can see no way that Volitis can meet his burden under the "regarded as" claim.

The EEOC Regulations provide that an employee is "regarded as" being disabled if he:

(1) [h]as a physical impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2) [h]as a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) [h]as none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(1)(1996). In the two most recent Third Circuit opinions discussing the "regarded as" claim, *Deane* and *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180 (3rd Cir.1999), the Third Circuit begins the analysis of the "regarded as" claim by setting forth this regulation.

■ After *Deane* and *Pathmark* were decided by the Third Circuit, the United States Supreme Court interpreted this EEOC regulation. In *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), the Supreme Court held that there are two ways in which individuals may fall within the "regarded as" definition of disability: "(1) a

---

**5.** Because the definition of "disability" under the PHRA and the ADA are the same, I will

only address the law under the ADA in this memorandum.

covered entity[6] mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment, when in fact, the impairment is not so limiting." *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). In either scenario, in order to sustain a "regarded as" claim, the perceived condition must be substantially limiting under the law.

■■■ Volitis and Merck agree that Volitis has a physical impairment as result of his knee injury. I assume, therefore, that Volitis' "regarded as" claim is that Merck has incorrectly perceived Volitis to be substantially limited in the major life activity of working, when in fact he is not substantially limited in the major life activity of working. In order to meet his burden under this claim, Volitis must show that Merck's perception of Volitis' limitations rises to the level of a substantially limiting impairment under the law. Volitis concedes that the limitations listed in the work restrictions from Volitis' outside physician do not rise to the level of a substantially limiting impairment under the law. Therefore, in order to show that Merck's perception of Volitis' limitations rises to the level of a substantial impairment under the law, Volitis must show that Merck has perceived him to be more limited than is indicated by the work restrictions from his outside physician.[7]

Volitis has presented no evidence that supports a conclusion that Merck has perceived him to be more limited than is indicated by the work restrictions from his outside physician. It is undisputed that Merck had knowledge of the work restrictions from Volitis' outside physician. The evidence shows that Merck (through Health Services) also conducted an independent evaluation of Volitis' physical impairment on several occasions. However, there is no basis in the evidence presented for concluding that Merck's independent evaluation resulted in a perception that Volitis is more severely limited than is indicated by Volitis' own physician's work restrictions.

The specific work limitations listed on Volitis' patient charts from Health Services are identical to, or less restrictive than, his physician's work restrictions.[8]

**6.** Private employers are covered entities under the ADA. *See Sutton v. United Airlines, Inc.*, 527 U.S. 471, 477, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

**7.** In order to fall within the "regarded as" definition of disability, the employer's misperception need not be a result of stereotypes or prejudice; "[E]ven an innocent misperception based on nothing more than a simple mistake of fact as to the severity ... of an individual's impairment can be sufficient to satisfy the statutory definition of a perceived disability." *Deane v. Pocono Medical Center*, 142 F.3d 138, 144 (3d Cir.1998). *See also, Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 191 (3d Cir.1999) (confirming that the law of the Third Circuit includes an employer's innocent mistake).

The legislative history of the ADA indicates that Congress added the "regarded as" prong to the definition of disability to address concerns about stereotypes and prejudices directed at the disabled. *See Deane*, 142 F.3d at 144. The Third Circuit has interpreted the definition to include innocent mistakes in order to eliminate snap judgements about employee's capabilities and to encourage employers to make individualized determinations. *See Deane*, 142 F.3d 138; *Pathmark*, 177 F.3d at 190 (stating that it is the employer's "initial responsibility to evaluate employees correctly").

**8.** Volitis' patient chart lists the following restrictions: "no lifting over fifty pounds; may sit up to six hours; may stand up to three hours; may walk up to three hours; no repetitive motion with right knee." Exhibit 4 of Plaintiff's Facts. The most recent work restrictions from Volitis' outside physician include the following: no walking for more than two hours; no standing for more than

Merck's internal documentation indicating that Volitis has "impaired mobility" does not contradict his patient charts from Health Services, because it does not define "impaired mobility". Arguably, Volitis claims that because Merck has granted him in-plant parking privileges that Merck has perceived him to be more severely limited than is indicated by his physician's work restrictions. This evidence shows that Merck is aware that Volitis has physical limitations, but does not speak to Merck's perception as to the severity of his limitations.[9] The only reasonable conclusions that can be drawn from the evidence, even as it is read most favorably to the plaintiff, is that Merck considered the work restrictions from Volitis' outside physician when conducting its own evaluation of Volitis and, if anything, found him to be less limited.

■ Even if there remains a material dispute of fact regarding whether Merck perceived Volitis to be more limited than is indicated by his work restrictions, Volitis has produced insufficient evidence to show that Merck's perception rises to the level of a substantially limiting impairment under the law. The Third Circuit has held that "[to] rise to the level of a disability, an impairment must significantly restrict an individual's major life activities. Impairments that result in only mild limitations are not disabilities." *Kelly v. Drexel Univ.*, 94 F.3d 102, 107 (1996) (citations omitted). The EEOC regulations provide that an individual is substantially limited in a major life activity if he is "unable to perform a major life activity that the average person in the general population can perform" or is "significantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can

perform that same major life activity." 29 C.F.R. § 1630.2(j). "When referring to the major life activity of working, the Equal Employment Opportunity Commission ("EEOC") defines "substantially limits" as: "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." " *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 523, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999)(quoting 29 C.F.R. § 1630.2(j)(3)(i)(1998)).

The Supreme Court has narrowly interpreted what is meant by "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." In *Sutton*, the Supreme Court held that "one must be precluded from more than one type of job, a specialized job, or a particular job of choice." *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). The Court elaborated by stating that, "[i]f jobs utilizing an individual's skills ... are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs." *Id.*

It is not clear from the standard set forth in *Sutton* what evidence an employee must present to show that his employer has regarded him as substantially limited in the major life activity of working. The case law provides no affirmative definition of "a class of jobs or a broad range of jobs in various classes." In other words, if it is not sufficient to show that one has been precluded from one particular job or one type of job, how many jobs must the employee have been denied in order to conclude that he has been precluded from a class of jobs or a broad range of jobs in various classes? *See Mitigating Measures*

---

three hours; no sitting for more than six hours; no lifting over fifty pounds.

**9.** Drawing such an unreasonable inference from this evidence would pose a risk of discouraging employers from making reasonable accommodations for employees.

*and 'Regarded As' Clause,* 113 Harv. L.Rev. 337, 346 (1999) (criticizing the Supreme Court's "overly narrow" approach to defining the "regarded as" clause and identifying the need for lower courts to develop a "functional middle ground for analyzing 'regarded as' claims concerning 'working' ").

Despite the lack of clarity as to what it means to be precluded from "a class of jobs or a broad range of jobs in various classes", Volitis has presented no evidence to show that Merck perceived him to be substantially limited in the major life activity of working under any conceivable standard. The evidence presented by Volitis shows only that he was precluded from two specific jobs—the positions of chemist and grounds crew—because of his physical limitations. Volitis presently remains in the position of process control room operator at Merck. Based on Merck's independent evaluation of Volitis, Volitis is also capable of performing the job of sterile operator. There is no evidence that the jobs of grounds crew and chemist are in a different class than the jobs of process control room operator and sterile operator. The evidence presented indicates merely that Merck perceives that Volitis is capable of performing as many jobs as they perceive that he is not capable of performing at Merck. It would be reaching far beyond the definition of a "substantially limiting impairment" under *Sutton* to say that this is sufficient to show that Volitis has been precluded from a broad range of jobs as a result of Merck's perception of his limitations.

Even if it remains a material dispute of fact as to whether Merck's perception rises to the level of a substantially limiting impairment under the law, Merck would still have a defense to liability. In *Pathmark,* the Third Circuit explained that an employer should not be held liable where the employer does not act unreasonably, but merely makes a "mistake about the extent of a particular employee's impairment [ ] in the course of an individual-ized determination." 177 F.3d at 193. The court stated that:

> "If an employer regards a plaintiff as disabled based on a mistake in an individualized determination of the employee's actual condition rather than a belief about the effects of the kind of impairment the employer regarded the employee as having, then the employer will have a defense if the employee unreasonably failed to inform the employer of the actual situation."

*Id.* Therefore, if the employer takes care to make an individualized assessment of the employee's capabilities, the burden shifts to the employee to correct the employer's mistake. This "reasonability defense", the Third Circuit held, "adequately protects employees" interests in not being erroneously regarded as disabled. *Id.*

The evidence presented shows that Merck did not act unreasonably when assessing Volitis' limitations and that Volitis unreasonably failed to inform Merck of his actual capabilities. Merck presents uncontroverted evidence that it is company practice to refer employees with medical restrictions who bid on jobs to Health Services for an individualized assessment of the employee's ability to perform the tasks of the particular job. The evidence shows that Volitis was referred to Health Services for such assessments and that his capabilities with respect to the jobs he sought were assessed. Furthermore, the only evidence presented shows that these assessments were made by Health Services with adequate knowledge of the demands of each position. On the other hand, Volitis has submitted no evidence that any supervisor or manager at Merck unreasonably used their discretion to deny Volitis a position, contrary to a positive assessment from Health Services. Volitis never requested and, in fact, asserts that he does not need accommodations to perform any of the jobs at Merck. In sum, Merck engaged in exactly the kind of individualized assessment of Volitis' physical limitations that the Third Circuit seeks to

encourage when considering him for the jobs on which he bid. *See Deane v. Pocono Medical Center*, 142 F.3d 138 (3rd Cir. 1998); *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180 (3rd Cir.1999).

 Moreover, there is no evidence that Volitis made any effort to correct Merck's medical assessment of his physical limitations. To the contrary, the evidence shows that Volitis was content with the restrictions from Health Services and with the in-plant parking privilege. Volitis testified that he is in fact less limited than is indicated by his outside physician's work restrictions. But, even assuming that this is true, he presented no evidence that he made Merck aware of his actual capabilities. Volitis confirmed his limitation with respect to climbing directly with the supervisor of grounds crew when discussing his interest in that position.[10] Evidence that he contested the denial of positions on which he bid based on his own perception that he is capable of performing the job is not sufficient to show that he made a reasonable effort to inform Merck of his actual abilities. Thus, even if there remains a dispute of fact as to whether Merck regards Volitis as substantially impaired in the major life activity of working, the facts of this case present precisely the circumstances in which the Third Circuit intended to make available to the defendant the "reasonability defense". *Pathmark*, 177 F.3d at 193.[11]

### CONCLUSION

Volitis has not made out, nor can he make out a prima facie case of discrimination based on a disability under the ADA or the PHRA. The defendant's motion for summary judgement will be granted. An appropriate order follows.

### ORDER

**AND NOW**, this day of January, 2001, it is **ORDERED** that defendant's motion for summary judgement is **GRANTED.**

---

10. Volitis testified in his deposition that he told the supervisor of grounds crew that he "wouldn't want to be in a situation of running office furniture up and down steps all day," one of the tasks of grounds crew. *See* Exhibit A (Volitis Dep.) of Defendant's Motion for Summary Judgement at 429.

11. The "reasonability defense" is:

"If an employer regards a plaintiff as disabled based on a mistake in an individualized determination of the employee's actual condition rather than on a belief about the effects of the kind of impairment the employer regarded the employer as having, then the employer will have a defense if the employee unreasonably failed to inform the employer of the actual situation." *Pathmark*, 177 F.3d at 193.