Edward R. WILLIAMS, et al., Plaintiff,

v.

PHILADELPHIA HOUSING AUTHORITY, Defendant.

No. CIV.A. 00–1709.

United States District Court, E.D. Pennsylvania.

Oct. 28, 2002.

Alex H. Pierre, Picard Losier and Associates, Phila, PA, Edwin F. Mc Coy, Edwin F. Mccoy & Associates, Philadelphia, PA, for Plaintiff.

Ellen K. Pomfret, Montgomery, McCracken, Walker, Dena B. Calo,Montgomery, Mccracken, Walker & Rhoads, Llp, Philadelphia, PA, David E. Brier, Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, PA, for Defendant.

## MEMORANDUM

EDUARDQ C. ROBRENO, District Judge.

## I. INTRODUCTION

Plaintiff Edward R. Williams ("plaintiff") brought suit against defendant Philadelphia Housing Authority ("PHA") based on claims arising out of plaintiff's employment as a police officer with and subsequent termination by PHA. The plaintiff was temporarily suspended without pay as a result of a heated altercation he had with a superior officer, during and after which plaintiff made a number of profane and threatening remarks. Plaintiff's hiatus from PHA lasted from his suspension, on May 19, 1998, until he was fired, on December 29, 1998. During the period between plaintiff's suspension and subsequent termination, plaintiff underwent various psychological examinations. The examining psychologists concluded that plaintiff suffered from severe depression, and that as a result, plaintiff should be

prohibited from carrying a firearm for a temporary period of time.

Based on these events, PHA refused to allow plaintiff to return to work at PHA until plaintiff received medical clearance to carry a firearm once again. In turn, plaintiff requested that PHA allow him to work in a capacity where it would not be necessary to carry a weapon. PHA refused, citing safety concerns, contending that plaintiff would have access to firearms in all available employment positions for which he qualified at PHA.

After the altercation with Captain Geiger, plaintiff stopped coming to work. While out of work, plaintiff drew down all available medical leave to which he was entitled.[1] After he had exhausted all of his medical leave, plaintiff requested in writing and PHA granted a leave of absence on two occasions. After the second leave of absence expired, although directed to do so by PHA, plaintiff did not request any additional leave. As a result of plaintiff's failure to request additional leave, his employment with PHA was terminated on December 29, 1998.

In his complaint, plaintiff alleges disability discrimination under the ADA, retaliation in violation of the ADA and disability discrimination in violation of the PHRA. Before the court are: 1) defendant's motion for summary judgment on all of these claims and 2) plaintiff's motion for partial summary judgment on its claim of disability discrimination for failure to accommodate.

For the reasons stated below, the court will grant defendant's motion for summary judgment as to all counts, and correspond-ingly deny plaintiff's motion for partial summary judgment as to failure to accommodate.

## II. CHRONOLOGY AND BACKGROUND [2]

The plaintiff was employed by the PHA as a housing police officer since March 14, 1974. On May, 19, 1998, plaintiff was suspended without pay. According to both parties, plaintiff was suspended as a direct result of a heated confrontation between plaintiff and Captain Edward Geiger, one of plaintiff's superior officers.

On the same night, following the confrontation, plaintiff called a Delaware County Psychological Services Counselor. He spoke with the counselor for approximately thirty minutes. During this conversation, the plaintiff stated that he understood "why people go postal." He also talked about "smoking people" and "having the means to do it." In response to these statements, the counselor insisted that plaintiff go immediately to an emergency room, and informed the plaintiff that if he did not comply voluntarily, he (the counselor) would be forced to involve the police. After responding in a profane and vulgar manner, the plaintiff hung up the phone.

Two days after the incident with Captain Geiger, on May, 21, 1998, Captain Geiger wrote to plaintiff directing him to report to the PHA radio room for duty. Plaintiff, however, never reported to the radio room as directed, but instead, began calling out sick on a daily basis.

Based on these events, PHA requested that plaintiff submit to an independent

---

1. During the period between plaintiff's suspension and his psychological examination, plaintiff was instructed to report to work in the PHA radio room. PHA refused to allow plaintiff to work in the radio room only after PHA received the results of plaintiff's psychological examination.

2. The facts recited here are either uncontested or, when contested, they are construed in the light most favorable to plaintiff, the non-movant.

psychological examination with Dr. Laurene Finley on June 29, 1998. Plaintiff, however, failed to attend the scheduled examination, informing PHA that he was unable to attend the scheduled examination because he was the coach of his son's little league team, and the team had a game scheduled at the time of the appointment.

On two separate occasions, July 29, 1998 and September 22, 1998, PHA advised plaintiff that he had exhausted his available leave and that unless he requested an additional leave of absence, he would be deemed to have voluntarily resigned. In turn, plaintiff twice requested, and was granted,[3] additional leaves of absence.

Meanwhile, plaintiff underwent a psychological examination by Dr. Laurene Finley, the PHA designated psychologist.[4] In a letter dated October 10, 1998, Dr. Finley wrote, in relevant part:

> Mr. Williams is fully capable of working, for a temporary period, in either an administrative and/or clerical capacity. He should not carry a weapon, however, for a minimum period of three months. He can work around other officers who will be carrying their weapon .... [I]t is anticipated that [plaintiff] will be able to fully return to active duty, resuming his usual job responsibilities after this approximate three month period. However, a more definite frame cannot be provided at this time, pending a reevaluation.

On October 13, 1998, plaintiff requested that PHA temporarily reassign him to work in the PHA training unit. Assistant Chief Hughes, on behalf of PHA, responded, in writing, that "it is the position of this police department ... [that] the specific position you are requesting is not open to you due to your on-going treatment with Dr. Lauren[e] Finley ...." Assistant Chief Hughes further noted that "[t]his department has also concluded that once you have completed all of your treatment ... with authorization to carry firearms once again, you are to report back to uniform patrol duty."[5]

On October 21, 1998, plaintiff requested an assignment "in the [PHA] radio room until [his] 3 month evaluation [was] over ...." If assigned to the radio room, plaintiff would not have been required to carry a gun. Plaintiff's request, however, was denied once again.

Noting safety concerns, as well as the anticipation that plaintiff would return to work as a police sergeant in as early as 90 days, as the basis for its decision, PHA denied the request. PHA also noted that plaintiff would have access to firearms in the radio room, and would be working closely with others who carried firearms. PHA maintained that, in light of plaintiff's insubordinate and threatening behavior towards Captain Geiger, coupled with plaintiff's talk of "smoking people," "going postal," and "having the means to do it," placing plaintiff in the radio room would have created a risk to other PHA employees. Finally, PHA claimed that no other

---

**3.** While the pleadings are not entirely clear as to whether plaintiff's second request was, in fact, approved by PHA, for the purposes of this opinion, the court may assume that plaintiff's request was approved, since plaintiff was not terminated for failing to respond to PHA's directive that he request a written leave of absence.

**4.** Before submitting to an examination by Dr. Finley, plaintiff was examined by his own treating psychologist. The conclusions arrived at by plaintiff's treating psychologist bear little relevance to the issues examined here; and in what little relevance they do bear, they support a finding in favor of PHA.

**5.** The plaintiff does not challenge PHA's refusal to assign him to the training unit.

positions were available at PHA for someone with plaintiff's qualifications.

On December 3, 1998, Carl Marinelli, PHA's assistant General Manager of Human Resources, informed plaintiff that, once again, he had exhausted all his leave time at PHA, and that to maintain his employment, he needed to request an additional leave of absence. Mr. Marinelli's letter further informed the plaintiff that if he did not request an additional leave of absence by December 18, 1998, his employment with PHA would be terminated. Included within the letter was Mr. Marinelli's telephone number. Plaintiff however, by his own admission, never called Mr. Marinelli or otherwise responded to the letter.[6]

On December 29, 1998, Mr. Marinelli wrote plaintiff a second letter, informing plaintiff that his employment with PHA had been terminated. The letter stated that PHA had terminated plaintiff's employment based upon plaintiff's failure to request an additional leave of absence or otherwise contact PHA in response to the December 3, 1998 letter. PHA maintains that plaintiff's failure to respond to this letter was the sole reason behind PHA's decision to terminate plaintiff's employment.

During the time between plaintiff's initial suspension on May 19, 1998 and the termination of his employment on December 29, 1998, the plaintiff continued to coach his son's little league team and in that role, he interacted, as necessary, with the participating children and their parents. Additionally, plaintiff remained involved in the community until he accepted a job in late 1999 that required him to work nights. Furthermore, plaintiff indi-

cated that during this time period, he applied for jobs with SEPTA, Avis Rent-a-Car, Budget Rent-a-Car, and PGW, and that in his opinion, he could have performed the essential functions of those jobs, as well as those necessary to work in PHA's radio room, throughout 1998.[7]

On March 31, 2001, the plaintiff filed the instant action, alleging the following causes of action: 1) discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"); 2) retaliation in violation of Title VII and the ADA; 3) discrimination in violation of the Pennsylvania Human Relations Act("PHRA"); 4) intentional and/or negligent infliction of emotional distress; 5) defamation, false light, and invasion of privacy; 6) breach of implied covenant of good faith and fair dealing; 7) wrongful discharge; 8) discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); 9) loss of consortium (brought on the part of Angelynne Williams); and 10) punitive damages.

On June 8, 2001, the court dismissed plaintiff's claims: 1) under Title VII; 2) for intentional and negligent infliction of emotional distress; 3) for defamation, false light, and invasion of privacy; 4) for breach of the implied covenant of good faith and fair dealing; 5) for discrimination under the ADA; and 6) for punitive damages.

On December 20, 2001, the court dismissed plaintiff's claims for wrongful discharge and loss of consortium.

Before the court are cross-motions for summary judgment. PHA has moved for summary judgment on the remaining

---

**6.** Plaintiff also acknowledged receipt of the December 3, 1998 letter from Mr. Marinelli.

**7.** Plaintiff also claims that he could have returned to active duty at PHA as a police

officer if only PHA had gotten rid of Captain Geiger and other superior officers that plaintiff found objectionable.

counts: 1) disability discrimination under the ADA; 2) retaliation in violation of the ADA; and 3) disability discrimination in violation of the PHRA.[8] Subsequently, the plaintiff moved for partial summary judgment on the disability discrimination claim, to the extent that it is based upon a failure to accommodate.

## III. DISCUSSION

### A. *The Standard for Summary Judgment.*

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The role of the trial court is to determine whether there are material factual issues that merit a trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making that determination, the court must give the nonmoving party the benefit of all reasonable inferences that might be drawn from the underlying facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538, (1986); *Sempier v. Johnson and Higgins,* 45 F.3d 724, 727 (3d Cir.1995) (en banc). Summary judgment is appropriate if the court finds that the record "could not lead a rational trier of fact to find for the nonmoving party, [and] there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

### B. *Plaintiff has Failed to Establish a Claim of Unlawful Retaliation under the ADA.*

The ADA's retaliation provision provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge ... under [the ADA]." 42 U.S.C. § 12203(a).

The Title VII framework for the analysis of retaliation claims is also applicable to ADA claims. Similarly, the now familiar burden shifting paradigm of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) applies to retaliation claims under the ADA in cases based on indirect evidence of discrimination. *Shaner v. Synthes,* 204 F.3d 494, 500 (3d Cir.2000).

To establish a prima facie case of retaliation under the ADA, a plaintiff-employee must show that: 1) he engaged in "protected employee activity;" 2) the defendant-employer took adverse action against the employee, either contemporaneous with or after the occurrence of the protected activity in which the employee engaged; and 3) there exists "a causal connection between the employee's protected activity" and the adverse action taken by the employer. *Shaner,* 204 F.3d at 500 (citing *Krouse v. American Sterilizer Co.,* 126 F.3d 494, 500 (3d Cir.1997)).

Once the employee has established a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for the adverse employment action. *See Shaner,* 204 F.3d at 500. "The employer's burden at this stage is

---

**8.** The PHRA follows the same burden-shifting formula and standards as the ADA. *See Kelly v. Drexel Univ.,* 94 F.3d 102, 104–05 (3d Cir. 1996); *Harris v. Smithkline Beecham,* 27 F.Supp.2d 569, 576 (E.D.Pa.1998) (applying the same standards to Title VII, Section 1981, and PHRA claims), *aff'd mem,* 203 F.3d 816 (3d Cir.1999). Thus, the court's analysis, findings and conclusions herein apply to plaintiff's claims under the ADA and the PHRA.

'relatively light': it is satisfied if the defendant articulates *any* legitimate reason for the [adverse employment action]; the defendant need not prove that the articulated reason actually motivated the [action]." *Krouse,* 126 F.3d at 500–01 (emphasis added) (alteration in original) (quoting *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920 n. 2 (3d Cir.1997)). While the employer has the burden of production for articulating a non-discriminatory and non-retaliatory reason for the adverse employment action, the burden of persuasion, however, remains at all times with the employee. *see St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Once the burden of production is satisfied by the employer, the employee must be able to convince the factfinder that: 1) the employer's proffered explanation is false and pretextual and 2) retaliation was the real reason for the adverse employment action. *Krouse,* 126 F.3d at 501.; *see Woodson,* 109 F.3d at 920 n. 2 (discussing proper standard to apply under Title VII retaliation case); *see also St. Mary's,* 509 U.S. at 519, 113 S.Ct. 2742 ("It is not enough ... to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.") (emphasis omitted). In the final analysis, it is the employee's burden to prove by a preponderance of the evidence that, despite any legitimate reasons for the adverse action that are proffered by the employer, "retaliatory animus played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process." *Krouse,* 126 F.3d at 501 (citing *Woodson,* 109 F.3d at 931–35).

In determining whether to grant summary judgment in favor of the employer, based upon the third prong of the *McDonnell Douglas* framework, "the court focuses on whether there is sufficient evidence from which a jury could conclude that the purported reasons for defendant's adverse employment actions were in actuality a pretext for intentional race [or disability] discrimination," or, in this case, retaliatory animus. *Jones v. Sch. Dist. of Philadelphia,* 198 F.3d 403, 412–13 (3d Cir.1999) (quoting *St. Mary's,* 509 U.S. at 515, 113 S.Ct. 2742). In order to withstand summary judgment on the issue of pretext, the plaintiff must be able to point "to some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory [or retaliatory] reason was more likely than not a motivating or determinative cause of the employer's action." *Jones,* 198 F.3d at 413 (quoting *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994)) and *Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061, 1067 (3d Cir.1996) (en banc).

As the Third Circuit points out, "[t]o discredit the employer's proffered reason, ... the plaintiff cannot simply show that the employer's decision was wrong or mistaken ...." *Fuentes,* 32 F.3d at 765. On the other hand, the plaintiff need not produce direct evidence of retaliatory intent. *See Shaner,* 204 F.3d at 503 (citing *Pivirotto v. Innovative Sys., Inc.,* 191 F.3d 344, 352 n. 4 (3d Cir.1999)). Rather, the plaintiff can satisfy his burden on summary judgment by producing circumstantial evidence that demonstrates "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] nondiscriminatory [or non-retaliatory] reasons." *Fuentes,* 32 F.3d at 765 (citations and internal quotation marks omitted) (emphasis and first alteration in original).

Here, the plaintiff alleges two incidents of retaliation: 1) PHA's failure to provide "reasonable accommodation" by transferring the plaintiff to the radio room as he had requested; and 2) PHA's decision to terminate plaintiff's employment on December 29, 1998.

1. *Plaintiff has failed to establish a claim for retaliation by failure to accommodate.*

█ The plaintiff's retaliation claim has no merit to the extent that it is based upon PHA's failure to accommodate his request for a transfer to the radio room. The only evidence plaintiff puts forth in support of his retaliation claim based on PHA's alleged failure to accommodate is: 1) that he, in fact, requested an accommodation in the form of a transfer to the radio room; and 2) that PHA denied this request. The plaintiff asserts that PHA's failure to accommodate was in "retaliation" of his request for a transfer to the radio room, and thus, PHA has unlawfully retaliated against him in violation of the ADA. The court does not agree.

In essence, the plaintiff makes the circular argument that PHA denied his request to be transferred to the radio room in retaliation for his asking to be transferred to the radio room. Assuming, without deciding, that a request for a reasonable accommodation constitutes protected activity,[9] and that defendant's failure to transfer the plaintiff to the radio room, as requested, constitutes an adverse employment action, plaintiff has nonetheless failed to establish a retaliation claim because he has failed to establish the requisite causal connection between the protected activity and the adverse employment action.

Literally, of course, the denial of the transfer followed the request made by plaintiff. This averment proves no more than night follows day or that Tuesday follows Monday. The "causal connection" sought, and as to which plaintiff offers nothing in support, is not that the adverse employment action merely followed the protected activity in the chronological sense. Rather, what must be shown is that retaliatory animus on the part of the employer, which resulted from plaintiff's engaging in protected activity, was a substantial factor in motivating the adverse employment decision.[10] *See Shaner,* 204

**9.** PHA, in its reply brief, notes that a number of courts have questioned whether, based upon the plain language of the ADA, an employee's request for a reasonable accommodation constitutes protected activity under the ADA. *See Soileau v. Guilford of Maine, Inc.,* 105 F.3d 12, 16 (1st Cir.1997); *Nerosa, et al. v. Storecast Merchandising Corp.,* 2002 WL 1998181 at *7 n. 11 (E.D.Pa. August 28, 2002); *Williams v. Eastside Lumberyard,* 190 F.Supp.2d 1104, 1120 (S.D.Ill.2001). Many courts, however, have inferred or assumed that such action is protected. *See Nerosa,* 2002 WL 1998181 at *7 n. 11. Defendant urges the court to hold that a request for a reasonable accommodation does not constitute protected activity under the ADA. Assuming *arguendo* that a request for a reasonable accommodation does, in fact, constitute protected activity, nonetheless, the court finds that plaintiff has failed to establish a claim of

retaliation. Thus, the court need not, and will not, decide this issue.

**10.** Plaintiff's claim, to the extent that it is based upon the defendant's denial of his request for a reasonable accommodation, is stated as a retaliation claim in form, but is, in substance, a claim of failure to accommodate. *See Lucas v. W.W. Grainger, Inc.,* 257 F.3d 1249, 1261 (11th·Cir.2001) (noting plaintiff's attempt to "reclothe" failure to accommodate claim as a claim of retaliation); *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1288 (11th Cir.1997) ("[T]he acts [the plaintiff] describes relate directly to her 'reasonable accommodation' claim, not her retaliation claim, and accordingly provide no basis for denying summary judgment on this issue."); *Parker v. Noble Roman's, Inc.,* 1997 WL 839138 at *8 (S.D.Ind. Dec.10, 1997) ("[a]n examination of [plaintiff's] allegations,

**640**

F.3d at 501; *Krouse,* 126 F.3d at 501; *San Filippo v. Bongiovanni, et al.,* 30 F.3d 424, 430 (3d Cir.1994).

Accordingly, defendant's motion for summary judgment will be granted as to plaintiff's claim of retaliation to the extent that it is based upon the defendant's denial of the plaintiff's transfer request.

2. *Plaintiff has failed to establish a claim for retaliation by termination.*

■ The plaintiff also fails to establish a claim of retaliatory termination. Termination, of course, is the paradigmatic form of adverse employment action. Even assuming that the plaintiff's request to be transferred to the radio room constitutes protected activity, and that the plaintiff has established the requisite causal connection between his request and his subsequent termination,[11] plaintiff's retaliatory termination claim still has no merit.

According to the PHA, it terminated the plaintiff's employment because the plaintiff had exhausted all available leave time to which he was entitled and failed to request a leave of absence or otherwise contact PHA in response to Carl Marinelli's December 3, 1998 letter.[12] PHA states that the plaintiff had the opportunity to maintain his employment by simply contacting Mr. Marinelli (whose telephone number was included in the December 3, 1998 letter) and requesting a leave of absence. This, the plaintiff admits he failed to do.

Thus, on December 29, 1998, in accordance with the PHA personnel policy regarding leave, the plaintiff's employment with PHA was terminated. This explanation satisfies PHA's burden of producing a legitimate non-retaliatory reason for the adverse employment action.

In turn, the plaintiff presents very little in the way of evidence that may demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action." *Fuentes,* 32 F.3d at 765. Specifically, the plaintiff points to two instances that allegedly demonstrate that the defendants proffered reasons for terminating the plaintiff are pretextual.

First, the plaintiff cites an answer given by the defendant in responding to an interrogatory in this litigation, which stated that the defendant was without sufficient knowledge to enable it to admit or deny whether or not a certain memorandum was ever written. According to the plaintiff, on September 22, 1998, an interoffice memorandum was written which stated that the plaintiff had until September 28, 1998 to request a medical leave of absence or he would be fired. On September 28, plaintiff responded in writing to the memorandum in question. The defendant has since admitted that these writings exist. Nonetheless, the defendant has never suggested that the September 22, 1998 memorandum had anything to do with plaintiff's

however, leads us to conclude that while such allegations may reflect a refusal to accommodate [plaintiff's] disability, they do not amount to retaliation"). Thus, the court will address this claim in its proper context, as a claim of failure to accommodate, below.

**11.** It should be noted, once again, that the court will not decide whether plaintiff's request constitutes protected activity; nor is the court concluding that plaintiff has established the necessary causal connection. The court is merely assuming, for the sake of judicial

economy, that these elements have been established. In fact, it appears to the court that, under virtually the same analysis used to conclude that the plaintiff has failed to establish that the defendant's articulated reasons are pretextual, plaintiff has failed to establish the requisite causal connection.

**12.** The December 3, 1998 letter stated that if plaintiff did not request a leave of absence by December 18, 1998, PHA would terminate the plaintiff's employment.

termination. In fact, the plaintiff was not terminated for any reason connected to the September 22, 1998 memorandum because he, in fact, responded to it. The only reason presented by the defendant for terminating the plaintiff was his failure to respond to the December 3, 1998 letter from Mr. Marinelli, which the plaintiff admits he failed to do. Not only does the evidence offered by plaintiff fail to demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action," *Fuentes*, 32 F.3d at 765, it is irrelevant to the issue. If anything, this evidence serves to buttress the defendant's proffered legitimate reason, in that it shows that adverse employment action was taken only when plaintiff failed to respond to letters instructing him to request additional leave.

Secondly, the plaintiff points to another memorandum which states that "if the plaintiff does not apply for a medical leave of absence by November 30, 1998, it is the position of this department that human resources terminate [the plaintiff] according to PHA personnel policy regarding medical leave." Presumably the plaintiff presents this as evidence that the decision to terminate the plaintiff was made even before the December 3, 1998 letter was written. The court disagrees. To the contrary, viewed in the light most favorable to the plaintiff, the only logical inference that may be drawn from the memorandum is that PHA was restating its directive that unless plaintiff make a written request for an additional leave of absence or otherwise contact PHA regarding the same, he would be terminated. According to the plain terms of the memorandum, it is clear that

had plaintiff requested additional leave, he would not have been terminated.

The only other evidence that appears in the pleadings and may be pertinent to this issue consists of: 1) plaintiff's receipt of and response to a memorandum written on July 29, 1998, which stated that plaintiff would exhaust all of his sick leave and annual leave benefits by August 20, 1998, and that failure to request an extended leave of absence would result in termination; 2) plaintiff's October 13, 1998 request to be transferred to the radio room, which, for the purpose of this case, has been assumed by the court to constitute protected activity, coupled with the fact that plaintiff was, indeed, terminated on December 29, 1998.

First of all, the fact that the plaintiff previously received a writing similar to the December 3, 1998 letter from Mr. Marinelli, and that after responding to the writing, he was not terminated, supports the defendant's proffered reason for termination. There is simply no evidence from which a reasonable jury could conclude that had plaintiff responded to the December 3, 1998 letter as he did to the previous requests by PHA that he request additional leaves of absence, he would have been terminated nonetheless.

█ Secondly, the "mere fact that adverse employment action occurs after [the employee has engaged in protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir.1997).[13] The Third Circuit has recognized that "our cases are seemingly split on the question of whether the timing of the allegedly retaliatory action can, by itself, *ever*, support a finding of causation."

---

**13.** Although, in making this statement, the court in *Robinson* was addressing the issue of whether there existed a causal connection between the adverse employment action and

plaintiff's protected activity, *Robinson*, 120 F.3d at 1302, the reasoning of the Third Circuit is equally applicable here.

*Krouse,* 126 F.3d at 503 (internal quotations omitted) (emphasis in original); *compare Woodson,* 109 F.3d at 920 (stating in dicta that "temporal proximity between the protected activity and the termination is sufficient to establish a causal link") *with Delli Santi v. CNA Ins. Cos.,* 88 F.3d 192, 199 n. 10 (3d Cir.1996) ("timing alone will not suffice to prove retaliatory motive"). However, "[e]ven if timing alone could ever be sufficient to establish [retaliatory motive], the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before the causal link will be inferred." *Krouse,* 126 F.3d at 503 (quoting *Robinson,* 120 F.3d at 1302); *see, e.g., Jalil v. Avdel Corp.,* 873 F.2d 701, 708 (3d Cir.1989) (causal link established where discharge followed rapidly, only two days later, after employer became aware that employee engaged in protected activity).

In the case at bar, the protected activity (i.e., the request for a transfer to the radio room) occurred on October 21, 1998. The adverse employment action (i.e., plaintiff's termination) occurred on December 29, 1998. Under the circumstances of this case, and given the intervening events, including plaintiff's failure to request additional leaves of absence after his previous leave had expired, no reasonable jury could conclude that the two events shared a causal link.

Finally, the plaintiff produces no evidence that his termination was not in accordance with PHA's personnel policy regarding medical leave, or that similarly situated employees who had not requested a transfer were not terminated despite failing to request additional leave after PHA ordered them to do so. *See Pivirotto,* 191 F.3d at 354; *Krouse,* 126 F.3d at 503.

Therefore, the court finds that the plaintiff has failed to produce "sufficient evidence from which a jury could conclude that the purported reasons for defendant's adverse employment actions were in actuality a pretext" for retaliatory animus, *Jones,* 198 F.3d at 412, and that therefore, defendant is entitled to judgement as a matter of law. Accordingly, defendant's motion for summary judgment will be granted as to plaintiff's retaliatory termination claim.

C. *Plaintiff has Failed to Establish a Claim of Disparate Treatment under the ADA.*

1. *Plaintiff has failed to establish a failure to accommodate claim under the ADA.*

Under the ADA, employers are prohibited from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is defined by the ADA as a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 306 (3d Cir.1999).

▮ Accordingly, in order for a plaintiff to establish a prima facie case of discrimination under the ADA, he must show that: 1) he is "disabled" within the meaning of the ADA; 2) he is otherwise qualified for the job; and 3) "he has suffered an adverse employment decision as a result of discrimination." *See Shaner,* 204 F.3d at 500 (citing *Gaul v. Lucent Techs., Inc.,* 134 F.3d 576, 580 (3d Cir.1998)).

Discrimination under the ADA, however, "encompasses not only adverse actions mo-

tivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." *Taylor*, 184 F.3d at 306. Thus, under the ADA, an employer unlawfully discriminates against a qualified individual with a disability when the employer fails to provide "reasonable accommodations" for the disability, unless doing so would impose undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9(a); *Taylor*, 184 F.3d at 306.

A "disability" is defined by the ADA as: 1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; 2) a record of such impairment; or 3) being regarded as having such an impairment. 42 U.S.C. § 12102(2); *Taylor*, 184 F.3d at 305–06. The regulations define "major life activities" as "those basic activities that the average person in the general population can perform with little of no difficulty," including caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. *See* 29 C.F.R. § 1630.2(I).

■ Plaintiff contends that his mental impairment (depression) substantially limited the major life activities of employment and interaction with family, friends and co-workers. The defendant does not contend that plaintiff did not suffer from a mental impairment, nor does the defendant contend that employment and social interaction do not constitute major life activities. The defendant argues instead, that: 1) the plaintiff's depression did not act to substantially limit either of these major life activities; 2) the plaintiff did not have a record showing that his depression substantially limited a major life activity; and 3) the defendant did not regard plaintiff's depression as substantially limiting his ability to work or socially interact with others.

a. *Plaintiff does not have a disability under the ADA, to the extent that such disability is based upon plaintiff's inability to interact with others.*

With regard to plaintiff's ability to socially interact with others, it is clear that plaintiff's depression did not substantially limit this major life activity. Circuit courts that have addressed whether social interaction constitutes a major life activity have arrived at conflicting results. *Compare Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 15 (1st Cir.1997) (holding that "the ability to get along with others" is not a major life activity); *with McAlindin v. County of San Diego*, 192 F.3d 1226, 1234 (9th Cir.1999) (holding that "[b]ecause interacting with others is an essential, regular function, like walking and breathing, it easily falls within the definition of 'major life activity'"). The Third Circuit has not spoken on the issue. *See Cohen v. Twp. of Cheltenham*, 174 F.Supp.2d 307, 330 (E.D.Pa.2001).

Even if the ability to interact with others constitutes a major life activity, it is clear that "mere trouble getting along with co-workers is not sufficient to show a substantial limitation." *McAlindin*, 192 F.3d at 1235. Plaintiff's burden is to show an inability to interact with people in general, rather than a mere inability to get along with specific individuals. *See Steele v. Thiokol Corp.*, 241 F.3d 1248, 1254–55 (10th Cir.2001).

Thus, assuming without deciding that social interaction is a major life activity, plaintiff's claim of disability fails. In this case, the evidence shows that plaintiff only had problems interacting with Captain Geiger and some other individuals at PHA. In fact, plaintiff, himself, has admitted that following his confrontation with Captain Geiger: 1) he continued to coach his son's little league team, attended two games a week, and was able to interact with the

children and parents, as necessary, in his role as coach; 2) he continued to stay active in the community; 3) he was able to interact with others to the extent necessary to perform jobs for which he had applied after the confrontation; 4) he was able to interact with others to the extent necessary to work in the PHA radio room; and 5) he could have continued his employment at PHA if PHA had gotten rid of Captain Geiger and others who had "disrespected him" over the years. Thus, plaintiff, through his own admissions supplies all the evidence necessary, and no evidence to the contrary, to enable the court to conclude that plaintiff's inability to get along with others was limited to only certain individuals. Moreover, plaintiff provides no evidence that he was regarded as, or had a record of, suffering from a mental or physical impairment that substantially limited his ability to interact with others.

Accordingly, plaintiff's motion for partial summary judgment will be denied and defendant's motion for summary judgment will be granted, as to the issue of plaintiff's claim of disability, to the extent that it is based upon his inability to interact with others.

    b. *Plaintiff does not have a disability under the ADA, to the extent that such disability is based upon the major life activity of working.*

    i. *Plaintiff's depression does not substantially limit the major life activity of working.*

In determining whether an impairment "substantially limits" a major life activity, the court should consider the following factors: 1) the nature and severity of the impairment; 2) the duration or expected duration of the impairment; and 3) the permanent or expected long term impact. 29 C.F.R. § 1630.2(j)(2); *see Taylor,* 184 F.3d at 307. For an impairment to substantially limit a major life activity, the impairment must be "considerable" or "specified to a large degree." *See id.*

■ Justice O'Connor, writing for the Supreme Court, has explained the type of evidence needed to establish a substantial limitation on the major life activity of working. *See Sutton v. United Air Lines,* 527 U.S. 471, 491–92, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). As explained by Justice O'Connor, "[w]hen the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Id.* at 491, 119 S.Ct. 2139.

> To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents)are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

*Id.* at 492, 119 S.Ct. 2139. Thus, in order for a plaintiff to establish that he or she is disabled, as defined by the ADA, based upon having a mental or physical impairment that substantially limits the major life activity of working, he or she must provide evidence that he is unable to perform a broad range of jobs. *See id.* The plaintiff has failed to meet this burden.

■ The plaintiff asserts, and the court agrees, that, as a result of his depression, the plaintiff was temporarily prohibited from carrying a firearm. Thus, plaintiff's depression served to temporarily limit his employment opportunities to jobs which did not require him to do so. Although both parties seem to agree that this prohibition was temporary, they are in disagreement regarding its actual duration. Defendant claims that the prohibition covered a period of only three months.

Plaintiff, on the other hand, while apparently admitting that the prohibition was temporary, asserts that the actual term of the prohibition was indefinite. Excluding this disagreement as to the actual term of plaintiff's prohibition, there is no material dispute amongst the parties as to the employment limitations that result from plaintiff's depression. Moreover, the plaintiff provides no evidence of his being subject to any additional limitations with regard to the major life activity of working.

Viewed in the light most favorable to the plaintiff, the evidence presented by the parties supports a finding that plaintiff's depression served, at most, to temporarily limit the jobs that were available to the plaintiff to those jobs that do not require him to carry a firearm. Plaintiff argues that in light of his limited education, this employment limitation substantially limits the employment opportunities that are available to him. Aside from this conclusory assertion, plaintiff has failed to provide any evidence that his depression precludes him from obtaining "a broad range of jobs." *See Sutton,* 527 U.S. at 492, 119 S.Ct. 2139. In fact, plaintiff at his deposition, admitted that he "could have performed [the] duties" of a bus driver, chauffeur, and tow truck operator and that he could have worked for SEPTA, Budget Rent–a–Car and Avis Rent-a-car, as well as in the radio room at the PHA. Accordingly, the court finds that "a host of differ-

ent types of jobs are available" to plaintiff, and thus, he is "not precluded from a broad range of jobs." *See id.; see also Tice v. Centre Area Transp. Auth.,* 247 F.3d 506, 512–13 (3d Cir.2001) (holding that plaintiff, who was unable to drive a bus because of a back injury, was not "disabled" under the ADA); *Knoll v. Southeastern Pa. Transp.,* 2002 WL 31045145 at *9 (E.D.Pa. September 11, 2002) (holding that plaintiff, who could not be a traffic officer because of poor vision, was not "disabled" under the ADA); *Volitis v. Merck & Co., Inc.,* 129 F.Supp.2d 765, 772 (E.D.Pa.2001) (holding that plaintiff, who could not walk for more than two hours, stand for more than three hours, sit for more than six hours and lift over 50 pounds, was not "disabled" under the ADA); *Popko v. Pa. State Univ.,* 84 F.Supp.2d 589, 594 (M.D.Pa.2000) (holding that plaintiff, who suffered from idiopathic epilepsy, was not "disabled" under the ADA). Thus, under *Sutton,* the court holds that plaintiff has failed to establish that his depression substantially limited the major life activity of working.

ii. *PHA did not regard plaintiff as having, nor did plaintiff have a record of having, a mental or physical impairment that substantially limited the major life activity of working.*[14]

In order for an individual to prove that he is "regarded as" disabled, and

**14.** A number of courts have held that an employer need only accommodate actual disabilities. As such, it is the position of those courts that a plaintiff cannot base a failure to accommodate claim on being regarded as having, or having a record of, an impairment that substantially limits a major life activity. *See Weber v. Strippit, Inc.,* 186 F.3d 907, 916–17 (8th Cir.1999), *cert. denied,* 528 U.S. 1078, 120 S.Ct. 794, 145 L.Ed.2d 670 (2000); *Workman v. Frito–Lay, Inc.,* 165 F.3d 460, 467 (6th Cir.1999); *Newberry v. E. Tex. State Univ.,* 161 F.3d 276, 280 (5th Cir.1998). *But see Katz v.*

*City Metal Co.,* 87 F.3d 26 (1st Cir.1996) (holding that "regarded as" employees are entitled to reasonable accommodations). Although the Third Circuit has indicated, in dicta, that logic supports the conclusion that only actual disabilities must be accommodated, it has explicitly declined to decide the issue. *See Buskirk v. Apollo Metals,* 307 F.3d 160, 2002 WL 31102694 at *12 n. 2 (3d Cir. September 20, 2002). It is unnecessary that this question be addressed here, however, because, in the case at bar, the court concludes

therefore "disabled" within the meaning of the ADA, he must show that either:

(1) a covered entity mistakenly believes that [he] has a physical [or mental] impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

*Sutton,* 527 U.S. at 489, 119 S.Ct. 2139. The Third Circuit has pointed out that the definition of "substantially limited" remains the same for a "regarded as" disabled plaintiff. *See Tice,* 247 F.3d at 514. Thus, to establish a disability under the ADA, based on being regarded as disabled, the plaintiff must show that PHA believed that, as a result of plaintiff's depression, the plaintiff was "precluded from a broad range of jobs." *Sutton,* 527 U.S. at 489, 492, 119 S.Ct. 2139.

■■■ The only evidence presented by plaintiff to show that PHA's conception of plaintiff's impairment was more limiting than plaintiff's actual impairment consists of PHA's refusal to allow the plaintiff to work in the radio room.[15] PHA defended

---

that, as a matter of law, plaintiff is neither regarded as, nor has a record of, having an impairment that substantially limits a major life activity.

15. Plaintiff makes much of the opinion of Dr. Finley that plaintiff should only be precluded from jobs which would require him to carry a gun. Reliance on Dr. Finley's opinion is misguided.

First of all, for the reasons stated above, plaintiff's actual disability only limits the plaintiff from working in a job which requires him to carry a gun. Moreover, plaintiff has a record of no greater disability. Thus, plaintiff's mental impairment does not qualify as a disability as defined by the ADA because, under *Sutton,* plaintiff is not "precluded from a broad class of jobs," and is therefore not "substantially limited" in the major life activity of working.

PHA's refusal to transfer plaintiff to the radio room does, however, affect the analysis of whether plaintiff qualifies as disabled under the ADA because PHA "regards" him as being disabled, but it does not affect the conclusion. PHA's refusal to transfer plaintiff to the radio room, is evidence that PHA "regarded" plaintiff as having a disability that was more limiting than his actual disability. Plaintiff's actual disability only limits plaintiff from being employed in a capacity in which he would be required to carry a firearm. While PHA's refusal to transfer plaintiff to the radio room, and its proffered reason for its refusal, serves as evidence that PHA "regard-

ed" plaintiff as having a disability that not only precluded him from being employed in a capacity in which he was required to carry a gun, but also precluded him from being employed in a capacity in which he had access to guns or would work around others who carried guns. Thus, PHA's perception of plaintiff's disability was clearly more limiting than his actual disability or record of disability.

Nonetheless, even PHA's more limiting perception of plaintiff's disability does not rise to the level of a "disability" as defined under the ADA and *Sutton.* This is so because, even if plaintiff's disability was as limiting as PHA apparently perceived it to be, it would still not preclude plaintiff from a "broad range of jobs" under *Sutton,* and would therefore not "substantially limit" the major life activity of working.

Secondly, PHA's refusal to transfer plaintiff to the radio room has no effect on the analysis of plaintiff's claim that PHA denied plaintiff's request to be transferred to the radio room in retaliation for his request to be transferred. As discussed in Part III. B. 1. of the opinion, plaintiff's retaliation claim, to the extent that it is based upon PHA's refusal to accommodate his request is not a claim of retaliation, but a failure to accommodate claim, and thus, must fail for the reasons stated above (plaintiff is not "disabled" under the ADA).

Finally, as addressed above, if the court assumes that a request for a reasonable accommodation constitutes protected activity, plaintiff may be able to state a prima facie case of retaliatory termination. Plaintiff has

this decision upon safety concerns. Once again, the court will view this evidence in the light most favorable to the plaintiff.

PHA's unwillingness to allow the plaintiff to work in a position where he would have access to firearms, at most, demonstrates that PHA regarded the plaintiff as having an impairment that precluded him from carrying a firearm, having access to a firearm, or being in close proximity to other individuals who carry firearms. Under *Sutton*, such a limitation does not substantially limit the major life activity of working because it does not preclude plaintiff from employment in a "broad class of jobs," *id.*, but rather it limits plaintiff's ability to work only in the PHA radio room or a job that requires plaintiff to carry a firearm, have access to a firearm, or be in close proximity to other individuals who carry firearms.

Under the circumstances, the court concludes, as a matter of law that plaintiff was not disabled nor regarded as disabled by PHA, and that he does not have a record of a disability.[16] Therefore, the court will deny plaintiff's motion for partial summary judgment, as to plaintiff's failure to accommodate claim, and grant defendant's motion for summary judgment as to the same.

2. Plaintiff has failed to establish a claim of disparate treatment under the ADA, to the extent that it is based upon discriminatory *termination*.

The above analysis regarding plaintiff's failure to establish that he is disabled as defined by the ADA is equally applicable to this claim. Accordingly, the court finds that plaintiff has failed to establish a claim of disparate treatment under the ADA, to the extent that it is based upon discriminatory termination, because plaintiff does not qualify as disabled under the ADA.

Moreover, even if the plaintiff had establish disability under the ADA, his claim of discriminatory termination would fail nonetheless. The *McDonnell Douglas* burden shifting framework, as described above, also applies to disparate treatment claims under the ADA. *See Shaner*, 204 F.3d at 500. Thus, once the plaintiff has established a prima facie case of disparate treatment based upon discriminatory termination, the burden shifts to the defendant to articulate any legitimate reason for terminating the plaintiff. *See id.* Once the defendant has satisfied the burden of production, the burden shifts to the plaintiff to provide sufficient evidence to persuade the factfinder that the defendant's proffered reason is a pretext for discrimination. *See id.* at 500–01; *Jones*, 198 F.3d

---

not produced enough evidence, however, to rebut PHA's proffered legitimate reasons for terminating plaintiff. PHA's refusal to transfer plaintiff to the radio room, where he would not be required to carry a gun, despite Dr. Finley's conclusion that Mr. Williams should only be prohibited from jobs for which he would be required to do so, could be viewed as evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the PHA's proffered legitimate reasons for terminating plaintiff's employment. This evidence, however, when viewed in combination with the facts that PHA thrice instructed plaintiff to request additional leaves of absence, in accordance with

PHA personnel policy, and he was fired only after ignoring PHA's third request, is insufficient for a reasonable jury to conclude that PHA's proffered reasons were pretextual.

**16.** While the plaintiff has, indeed, produced evidence of having a record of a mental impairment, the plaintiff has failed to provide any evidence of having a record of a disability the would raise plaintiff's limitations to a level that would substantially limit the major life activity of working. The plaintiff's record of mental impairment states only that plaintiff suffers from depression, but provides no evidence that plaintiff's depression substantially limits any major life activity under *Sutton*.

at 412; *Krouse,* 126 F.3d at 501; *Woodson,* 109 F.3d at 931–35; *Sheridan,* 100 F.3d at 1067; *Fuentes,* 32 F.3d at 764.

The court's analysis in Part III. B. 2. of this memorandum, regarding plaintiff's claim of retaliation by termination, is applicable here as well. Likewise, the court finds that the plaintiff has failed to provide sufficient evidence that would demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action," *Fuentes,* 32 F.3d at 765, that a reasonable jury could rationally "conclude that the purported reasons for defendant's adverse employment actions were in actuality a pretext for [discrimination]." *Jones,* 198 F.3d at 412–13 (quoting *St. Mary's,* 509 U.S. at 515, 113 S.Ct. 2742). Therefore, even assuming that plaintiff is able to establish a prima facie case of discriminatory termination under the ADA, plaintiff's claim fails under the third prong of the *McDonnell Douglas* paradigm. Accordingly, defendant's motion for summary judgment will be granted as to plaintiff's claim of discriminatory termination.

## IV. CONCLUSION

Based on the foregoing analysis, the court concludes that the plaintiff has failed to establish a claim of retaliation and disability discrimination under the ADA and PHRA. Accordingly, defendant's motion for summary judgment (doc. no. 41) is granted, and plaintiff's motion for partial summary judgment (doc. no. 48) is denied.

An appropriate order follows.

### *JUDGMENT*

**AND NOW,** on this 28th day of October, 2002, upon consideration of the order of the court dated 10/28/02, judgment is entered in favor of the defendant and against the plaintiff.

**AND IT IS SO ORDERED.**

### *ORDER*

**AND NOW,** on this 28th day of October, 2002, upon consideration of defendant's motion for summary judgment (doc. no. 41) and plaintiff's cross-motion for partial summary judgment (doc. no. 48), and all replies and responses thereto, it is hereby **ORDERED** that defendant's motion for summary judgment (doc. no. 41) is **GRANTED**. It is further **ORDERED** that plaintiff's cross-motion for summary judgment is **DENIED.**

**AND IT IS SO ORDERED.**